1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   FELIPE POLANCO DIAZ,                         No.  2:21-cv-0916 DC CSK P

12                        Plaintiff,

13           v.                                   ORDER AND FINDINGS AND
                                                  RECOMMENDATIONS
14   MARIA TORCEDO,

15                        Defendant.

16

17           Plaintiff is a state prisoner proceeding pro se with a civil rights action under 42 U.S.C.

18   § 1983.  This action proceeds on plaintiff's second amended complaint alleging that on December

19   21, 2020, while he was incarcerated at California State Prison, Sacramento ("CSP-SAC"),

20   defendant Maria Torcedo, a Certified Nurse Assistant ("CNA"), retaliated against plaintiff in

21   violation of the First Amendment by issuing a rules violation report against him after he

22   threatened to take legal action against her.  (ECF No. 24.)  Plaintiff is currently housed at High

23   Desert State Prison ("HDSP") in Susanville, California.

24           Before the Court are plaintiff's objections to pending findings and recommendations,

25   request for an extension of time to file an opposition to defendant's pending motion for summary

26   judgment, motions for reconsideration, and a motion for accommodations under the Americans

27   with Disabilities Act ("ADA").  As set forth below, the findings and recommendations are

28   vacated; plaintiff is granted an extension of time to file an opposition, the Court requests further

                                                      1

1  briefing on plaintiff's current access to his legal property, and the remaining motions should be

2  denied.

3  I.      BACKGROUND

4          On March 22, 2024, plaintiff moved for injunctive relief against staff at California Health

5  Care Facility ("CHCF"), where he was housed at the time, contending he was without access to

6  his legal and personal property, and mailroom staff had denied plaintiff the ability to send legal

7  mail without postage, despite his indigent status.  (ECF No. 43.)  Plaintiff was previously

8  summoned to Los Angeles County for unrelated court proceedings.  Thereafter, he was

9  transferred to North Kern State Prison ("NKSP") in Delano, and then transferred back to CHCF

10  on October 20, 2023, due to his disabled condition.  (ECF No. 43 at 1.)  Plaintiff's personal and

11  legal property was purportedly sent to CHCF on February 5, 2024.  (Id.)  As of March 14, 2024,

12  plaintiff remained without his legal property.  (ECF No. 43 at 2.)

13          On April 8, 2024, defendant Torcedo filed an opposition to plaintiff's motion for

14  injunctive relief providing evidence that plaintiff's legal materials were returned to him on March

15  20, 2024, and on March 29, 2024, an additional two envelopes of what appeared to be legal

16  materials were discovered in plaintiff's personal property and returned to him the same day.

17  (ECF Nos. 48, 48-1, 48-2, 48-3.)  In addition, although the CHCF mailroom previously rejected

18  plaintiff's request to send certain discovery-related documents, on March 25, 2024, plaintiff was

19  able to resend the documents, which defendant's counsel received on March 29, 2024.  (ECF No.

20  48-1 at 2.)  Also, in a March 28, 2024 phone call with plaintiff, defendant's counsel offered to

21  replace plaintiff's copies of the full docket in this action without charge, which plaintiff accepted.

22  (ECF No. 48 at 2, n.1.)

23          On April 17, 2024, the Court found that plaintiff did not rebut the evidence that he had

24  received his legal materials and was able to re-send the documents previously rejected by CHCF

25  mailroom staff.  In addition, the court docket confirmed that two documents were filed by

26  plaintiff on March 27, 2024, and each contained a proof of service signed by plaintiff on March

27  11, 2024.  (ECF Nos. 45, 46.)  Also, on March 14, 2024, plaintiff was able to mail his motion to

28  this Court.  (ECF No. 43 at 4.)  Further, plaintiff had recently been granted an extension of time to

rectify an incorrect address used for serving defendant's counsel, which remedied any potential injury from the delay caused by the rejected mailing.  (ECF No. 50.)  Because plaintiff was no longer facing imminent injury to his access to the courts, the Court recommended that his motion be denied as moot.  (ECF No. 51.)

On April 18, 2024, plaintiff filed a change of address, noting his transfer to HDSP, and the filing was signed on April 12, 2024.  (ECF No. 52.)  On May 9, 2024, plaintiff filed objections to the April 17, 2024 findings and recommendations.  (ECF No. 54.)  On July 23, 2024, plaintiff notified the Court that he had been transferred back to CHCF on July 11, 2024.  (ECF No. 56.)

On August 5, 2024, defendant filed a motion for summary judgment alleging that plaintiff failed to exhaust his administrative remedies, and failed to demonstrate that plaintiff's exercise of protected speech caused him to receive the rules violation report and served the motion on plaintiff at CHCF.  (ECF Nos. 57, 57-7 at 2.)

On August 12, 2024, plaintiff requested the case be set for settlement conference and stayed; defendant opposed the request, and it was denied on August 19, 2024.  (ECF Nos. 59-61.) The request was signed on July 30, 2024, before defendant filed her dispositive motion.  (ECF No. 59 at 2.)

On August 23, 2024, the district court adopted the findings and recommendations over plaintiff's objections and denied plaintiff's motion for injunctive relief.  (ECF No. 62.)

Plaintiff did not file an opposition to defendant's motion for summary judgment.  On August 28, 2024, plaintiff was ordered to file an opposition or statement of non opposition within thirty days.  (ECF No. 63.)  Plaintiff did not file an opposition or any response to the August 28, 2024 order.  On October 17, 2024, the Court recommended that this action be dismissed based on plaintiff's failure to prosecute this action; it was served on plaintiff at CHCF.  (ECF No. 65.)

On October 23, 2024, plaintiff filed a motion for extension of time to file an opposition to the motion for summary judgment, and a motion for reconsideration of the August 23, 2024 order denying plaintiff's motion for preliminary injunction.  (ECF No. 66.)  The proof of service was signed on October 19, 2024, and included plaintiff's notice of change of address to HDSP.

On November 4, 2024, plaintiff filed objections to the findings and recommendations,

3

1     which were served on October 30, 2024.  (ECF No. 67.)  In his objections, plaintiff contends he

2     fully exhausted his claims against defendant.  (Id. at 2.)  Also on November 4, 2024, plaintiff

3     filed a document styled, "Declaration Supporting Motion for Reconsideration[,] A.D.A. Court

4     Relief and Extension of Time," which plaintiff served on October 28, 2024.  (ECF No. 68.)

5          On November 15, 2024, defendant filed an opposition to plaintiff's motions for

6     reconsideration and ADA assistance.  (ECF No. 69.)  The fourteen day deadline to reply expired

7     on November 29, 2024, and plaintiff did not file a reply.

8     II.       MOTIONS FOR RECONSIDERATION

9        A.      The Parties' Positions

10          Plaintiff asks the Court to reconsider his request for injunctive relief against CHCF, and

11    order CHCF to return plaintiff's personal/legal property to him at HDSP.  (ECF No. 68 at 4.)

12    Plaintiff contends he is being subjected to retaliatory transfers which hinder his access to the

13    court.  (ECF No. 66 at 1.)  Plaintiff argues that "[a] preliminary injunction may be granted when it

14    appears by the verified complaint that the continuance of retaliation during the litigation would

15    produce waste and great irreparable injury to a party in the action."  (ECF No. 68 at 4.)  In

16    support, plaintiff claims he was twice the victim of assault at CHCF, he was sexually assaulted

17    three times within three months at HDSP, he was sent back to HDSP despite the sexual assault,

18    his personal and legal property was confiscated and sent to CHCF, and he is unable to cite case

19    law "for lack of access."  (Id.)  Plaintiff also claims that he is subject to the CDCR's "retaliatory

20    measure under a new efficient theory which is 'treat and return,'" even though plaintiff suffers

21    from a permanent disability.  (ECF No. 66 at 1-2.)  But he also claims that he has been classified

22    as "treat and return" since 2021.  (Id. at 2.)  He alleges that such classification deprives him of an

23    assignment to permanent prison housing, which precludes him from receiving his property.  (Id.)

24    Plaintiff states that as of October 28, 2024, his "property" has not been returned to him by HDSP.

25    (ECF No. 68 at 5.)  He also claims he is "currently waiting for HDSP to transfer [him] out from

26    their CTC [Correctional Treatment Center]-Medical Unit, where [plaintiff] was sexually harassed

27    and abused."  (Id. at 6.)

28          Defendant opposes the motions, arguing that plaintiff fails to assert new or different facts

or circumstances in support.  (ECF No. 69.)  Defendant contends that plaintiff's claim that he has been deprived of his "legal property" fails to identify whether he is deprived of legal materials related to the prosecution of this case or "property, of any sort, that legally belongs to him." (Id. at 3.)  In addition, defendant points out that plaintiff failed to set forth when the alleged deprivation occurred, so it is unclear whether the deprivation took place before or after the original motion for injunctive relief was decided.  (Id.)  Therefore, defendant argues the motions should be denied.

B.     Governing Standards

"A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009) (internal quotation marks and citation omitted).  In addition, pursuant to this Court's Local Rules, a party moving for reconsideration must show "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion, and why the facts or circumstances were not shown at the time of the prior motion." Local Rule 230(j).  "Whether or not to grant reconsideration is committed to the sound discretion of the court." Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing Kona Enter., Inc. v. Estate of Bishop, 229 F.3d 877, 883 (9th Cir. 2000).

C.     Discussion

The Court finds that plaintiff's motions for reconsideration do not provide relevant newly discovered evidence, or demonstrate the Court committed clear error, or that there was an intervening change in the controlling law related to the issues addressed in the August 23, 2024 order denying plaintiff's March 22, 2024 motion for injunctive relief.  Plaintiff's prior deprivation of relevant legal materials occurred while he was housed at CHCF and began when plaintiff was transferred to the Los Angeles County Jail for his potential testimony in an unrelated case. Plaintiff adduces no evidence that such transfer will occur again.  In addition, the circumstances

relied upon by plaintiff in his motions for reconsideration were not at issue in his prior motion, for example, his contention that he is being subjected to a new "treat and return" policy.  Also, plaintiff identifies no individual responsible for such current allegations, and defendant Torcedo, who renders medical care as a CNA at CSP-SAC, would not be responsible for plaintiff's transfers between CHCF and HDSP, or between CHCF and the Los Angeles County Jail.  Thus, plaintiff's current circumstances set forth in his pending motions have no nexus to the prior motion, let alone to his underlying retaliation claim against defendant Torcedo.  See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr., 810 F.3d 631, 633 (9th Cir. 2015) ("When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction.").  Because of these additional deficiencies, the Court declines to consider plaintiff's "treat and return" policy claim as newly discovered evidence that would support reconsideration of the prior order.  Further, the record demonstrates that following plaintiff's motion, the deprivation of legal materials pertinent to this case was rectified (as was his prior inability to send discovery related mail through the CHCF mailroom).  The Court found that plaintiff was no longer subject to imminent injury to his court access.  (ECF No. 51.)

For these reasons, the Court recommends that the district court exercise its discretion and deny plaintiff's motions for reconsideration because plaintiff fails to demonstrate that highly unusual circumstances exist to warrant reconsideration of the August 23, 2024 order denying plaintiff injunctive relief.

> D.   New Motions for Injunctive Relief

Liberally construing plaintiff's motions for reconsideration, the Court construes plaintiff's motions as new motions for injunctive relief.  The Court recommends that such new motions for injunctive relief be denied.

Plaintiff was previously provided the standards required to obtain injunctive relief, which is "an extraordinary remedy never awarded as of right." (ECF No. 51 at 2-3, quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  To qualify for injunctive relief, plaintiff must demonstrate:  (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an

injunction is in the public interest.  Winter, 555 U.S. at 20.  A deficiency in any element precludes

relief.  Id. at 23.  In his motions for reconsideration (ECF Nos. 66, 68), plaintiff fails to provide

facts supporting each element required under Winter, 555 U.S. at 20.  It is plaintiff's burden to

demonstrate that these requirements are met.  Rosado v. Alameida, 349 F. Supp. 2d 1340, 1344

(S.D. Cal. 2004).  Here, because plaintiff did not provide facts supporting each element under

Winter, plaintiff failed to meet his burden, and the new motions should be denied.  As discussed

below, the new motions fail for additional reasons.

      Importantly, plaintiff does not identify the individual responsible for transferring plaintiff

or depriving plaintiff of his property.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 395

U.S. 100, 110 (1969) ("It is elementary that one is not bound by a judgment . . . resulting from

litigation in which he is not designated as a party. . . . ").  This action proceeds solely against

defendant Torcedo, who provides medical care at CSP-SAC, not HDSP or CHCF.  As such,

defendant Torcedo would not be responsible for any of plaintiff's transfers from HDSP or to

CHCF or vice versa.  The Court does not have authority to enjoin the actions of individuals and

entities who are not parties to this lawsuit absent evidence that those non-parties were acting in

concert with a named defendant.  See Fed. R. Civ. P. 65(d)(2); see Zenith Radio Corp., 395 U.S.

at 110.  Plaintiff includes no such allegations in his motions.  (ECF Nos. 66, 68.)

      Further, such transfers and resulting property deprivations are not related to plaintiff's

retaliation claim against defendant Torcedo based on incidents that took place in 2020 at CSP-

SAC.  As the Ninth Circuit has explained:

> [T]here must be a relationship between the injury claimed in the
> motion for injunctive relief and the conduct asserted in the
> underlying complaint.  This requires a sufficient nexus between the
> claims raised in a motion for injunctive relief and the claims set forth
> in the underlying complaint itself.  The relationship between the
> preliminary injunction and the underlying complaint is sufficiently
> strong where the preliminary injunction would grant 'relief of the
> same character as that which may be granted finally.'  Absent that
> relationship or nexus, the district court lacks authority to grant the
> relief requested.

Pac. Radiation Oncology, 810 F.3d at 636.  Thus, to the extent plaintiff attempts to challenge the

"treat and return" policy, plaintiff must do so in a different civil rights case in which he names the

1   responsible individual as a defendant.

2          Moreover, plaintiff's statements concerning the deprivation of his property are

3   contradictory.  In defendant's opposition, defendant argues that plaintiff fails to specifically

4   identify the missing "property" or "legal property," and plaintiff did not provide specific dates,

5   other than his broad claim that he has been deprived of his "property" since 2021 (ECF No. 66 at

6   2).  (ECF No. 69 at 2.)  Plaintiff's broad claim is partially contradicted by the record

7   demonstrating that plaintiff's legal materials were returned to him on March 20, 2024, and on

8   March 29, 2024, an additional two envelopes of what appeared to be legal materials were returned

9   to him the same day.  (ECF Nos. 48, 48-1, 48-2 & 48-3.)  Also, defense counsel provided plaintiff

10  with copies of the full docket in this action without charge sometime after March 28, 2024.  (ECF

11  No. 48 at 2 n.1.)

12         In addition, plaintiff's broad claim is partially contradicted by a prior statement plaintiff

13  made in a previous motion.  (ECF No. 59.)  On August 12, 2024, plaintiff filed a motion signed

14  July 30, 2024, under penalty of perjury, in which he claimed he was deprived of his property

15  since April of 2023, but was provided his legal property in "approx[.] April 2024" at HDSP.  (Id.

16  at 1.)  When he filed that motion, plaintiff still had access to his legal property, because he found

17  a court order while reviewing "misarranged documents" on July 27, 2024.  (Id.)

18         Further, although plaintiff claims he is awaiting transfer out of the HDSP CTC medical

19  unit, plaintiff does not indicate where he anticipates he will be transferred.  Plaintiff did not file a

20  reply to defendant's opposition, so it is unclear whether plaintiff would be transferred to another

21  housing unit at HDSP, or back to CHCF.  But as of December 17, 2024, plaintiff remained

22  housed at HDSP.[1]

23         For the above reasons, the Court recommends that construing plaintiff's motions for

24

25  [1]  This information was obtained from the CDCR Inmate Locator website,
    https://ciris.mt.cdcr.ca.gov/ (accessed Dec. 17, 2024).  The Court may take judicial notice of
26  public records available on online inmate locators.  See United States v. Basher, 629 F.3d 1161,
    1165 (9th Cir. 2011) (taking judicial notice of Bureau of Prisons' inmate locator available to the
27  public); see also Foley v. Martz, 2018 WL 5111998, at *1 (S.D. Cal. Oct. 19, 2018) (taking
    judicial notice of CDCR's inmate locator).

28

1    reconsideration as new motions for injunctive relief, such motions be denied without prejudice.

2    III.    MOTION FOR EXTENSION OF TIME

3         Under the mailbox rule, plaintiff's objections to the findings and recommendations were

4    timely filed.[2]  Plaintiff states that his ability to file an opposition to the pending motion for

5    summary judgment has been hampered by his disabilities and his frequent transfers between

6    prisons which has deprived him of access to his property.[3]  (ECF No. 66.)  Plaintiff claims "he

7    has been deprived of property since departure from KVSP [Kern Valley State Prison] in 2021."

8    (Id. at 2.)

9         As discussed above, plaintiff's broad claim that he was deprived of property since 2021 is

10   partially contradicted by the record.  Moreover, defendant's motion for summary judgment was

11   served on plaintiff on August 5, 2024.  Plaintiff remained at CHCF until on or about October 15,

12   2024, when he was transferred to HDSP.  Plaintiff does not explain his failure to seek an

13   extension of time or file an opposition to the pending motion for summary judgment from mid to

14   late August 2024 through October 15, 2024, while he remained housed at CHCF.

15        On the other hand, with his motion for extension of time, plaintiff provided a copy of an

16   emergency appeal he submitted that confirmed he arrived at HDSP CTC unit on October 15,

17   2024, and sought receipt of three legal property boxes on October 16, 2024, but was told the

18   correctional officer was too busy.  (ECF No. 66 at 5.)  The next day, plaintiff was informed that

19   the correctional officer could not locate the boxes and confirmed that plaintiff's property had

20   been returned to CHCF.  (Id.)  While plaintiff did not include such relevant details in his motion,

21   a reasonable inference can be made that plaintiff's legal materials relevant to this case are in one

22   of those boxes because in the emergency appeal he references his urgent need for the property for

23

24   _____

     [2]  A pleading filed by a pro se prisoner is deemed to be filed as of the date the prison delivered it
25   to the prison authorities for mailing to the court clerk.  See Houston v. Lack, 487 U.S. 266, 270
     (1988); Douglas v. Noelle, 567 F.3d 1103, 1108-09 (9th Cir. 2009) (mailbox rule articulated in
     Houston applies to civil rights actions).

26
     [3]  Plaintiff states he became incapacitated by a fall in 2021.  (ECF No. 66 at 1.)  Plaintiff claims
27   he is a "paraplegic with heart conditions and paralyzed left arm," and is also "illiterate," with a
     TABE score of 8.0.  (ECF No. 67 at 1.)  Plaintiff also alleges that he has been subjected to
28   multiple retaliatory transfers between prisons.  (ECF No. 66 at 1-2.)

1    this case.  (Id.)

2           In any event, defense counsel did not address or confirm whether plaintiff now has access

3    to his legal property, and plaintiff did not file a reply to defendant's opposition, so it is unclear

4    whether plaintiff's emergency appeal, filed shortly before he filed the motions addressed herein,

5    accomplished the return of his legal property.  The record demonstrates plaintiff was transferred

6    not long after he was provided his legal property in late March, and his recent filings, liberally

7    construed, demonstrate he did not have access to his legal property when he filed the motions

8    addressed herein.  In her pending motion for summary judgment, defendant claims plaintiff failed

9    to exhaust administrative remedies.  In plaintiff's objections to the October 17, 2024 findings and

10   recommendations, plaintiff contends that "exhaustion was fully completed," and he has a

11   "CDCR-602 final appeal on record."  (ECF No. 67 at 2.)

12          Therefore, in an abundance of caution, the pending findings and recommendations to

13   dismiss based on plaintiff's failure to prosecute this action are vacated (ECF No. 65), and plaintiff

14   is granted one final extension of time to file an opposition to the motion for summary judgment.

15   If plaintiff currently has access to his legal materials, he shall notify defendant's counsel as soon

16   as possible, and file a notice with the Court within seven days from the date he receives this

17   order.

18          Meanwhile, in light of defense counsel's past cooperation and assistance, if plaintiff does

19   not have current access to his legal property, counsel for defendant is requested to contact the

20   litigation coordinator at HDSP to determine the status of plaintiff's legal property.  If plaintiff's

21   legal property is not at HDSP, the Court requests that defense counsel work with the litigation

22   coordinator to ensure plaintiff's legal property is returned to HDSP as soon as possible and

23   confirm whether or not plaintiff is due to be transferred away from HDSP within the next sixty

24   days.  The Court requests defense counsel file a status report regarding such issues within twenty-

25   one days from the date of this order.  If plaintiff files a notice that he currently has possession of

26   his legal property, defense counsel is relieved from responding to the Court's requests.

27          In the meantime, plaintiff is granted 30 days to file an opposition to defendant's motion

28   for summary judgment.  To assist plaintiff in preparing his opposition, the Clerk of the Court is

1  directed to send plaintiff a copy of defendant's motion for summary judgment.  (ECF Nos. 57, 57-

2  1, 57-2, 57-3, 57-4, 57-5, 57-6.)  Defendant's motion for summary judgment has been pending

3  since August 5, 2024, and raises only two claims, one of which plaintiff alleges he has evidence

4  to rebut.  The Court requests that plaintiff focus on filing his opposition to such motion as soon as

5  possible.

6  IV.  REQUEST RE EXHAUSTION

7       In one motion for reconsideration, plaintiff seeks "this Court['s] permission to 'enjoin

8  exhausted claims affecting and consolidating this case.'"  (ECF No. 68 at 4.)  Plaintiff then states

9  that:

10           If approval is rendered:  plaintiff will deliver immediately.

11           If not approved:  plaintiff will submit individual cases regarding new
             violations related chronologically with this case.

12

13  (Id.)  Plaintiff's request is unclear.  However, to the extent plaintiff seeks an order relieving him

14  of the exhaustion requirements of the Prison Litigation Reform Act of 1995 ("PLRA"), his

15  request is denied.  The PLRA provides that "[n]o action shall be brought with respect to prison

16  conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail,

17  prison, or other correctional facility until such administrative remedies as are available are

18  exhausted." 42 U.S.C.§ 1997e(a).  There is no "special circumstances" exception to the PLRA's

19  rule of exhaustion prior to filing "any action."  Ross v. Blake, 578 U.S. 632, 640 (2016).  Further,

20  the failure to exhaust administrative remedies is "an affirmative defense" and defendants have the

21  burden of "prov[ing] that there was an available administrative remedy, and that the prisoner did

22  not exhaust that available remedy."  Albino v. Baca, 747 F.3d 1162, 1171-72 (9th Cir. 2014).

23  Therefore, issues of exhaustion are dealt with on a case by case basis.  Thus, to the extent plaintiff

24  sought a general exception to the exhaustion requirement, plaintiff's request is improper and is

25  denied.[4]

26  _____

27  [4]  As for plaintiff's comment concerning the filing of individual cases, plaintiff is advised that
    Rule 20(a) provides that all persons may be joined in one action as defendants if "any right to
    relief is asserted against them jointly, severally, or in the alternative with respect to or arising out

28  of the same transaction, occurrence, or series of transactions or occurrences" and "any question of

11

1    V.     MOTION FOR ACCOMMODATIONS UNDER THE ADA

2           A.     The Parties' Positions

3           Plaintiff claims he is fully disabled, elderly, and has been under dependent care since

4    2021.  (ECF No. 68 at 5.)  Plaintiff is 51 years old.  (ECF No. 66 at 1.)  As noted above, plaintiff

5    is a paraplegic, and states that while his right arm is usable, it is affected by carpal tunnel

6    syndrome, arthritis, and nerve damage.  (ECF No. 68 at 6.)  Plaintiff seeks myriad

7    accommodations under the ADA, including a typewriter, a tablet for law library access, an ADA

8    writing-wheelchair accessible table, an order requiring the CDCR to permanently house plaintiff

9    near his family, and an order requiring the CDCR to "immediately transfer [plaintiff] out of

10   [CDCR] jurisdiction into another facility of [plaintiff's] choice."  (ECF No. 66 at 2.)

11          In opposition, defendant argues that plaintiff's request should be construed as a request for

12   appointment of counsel because "the only option for providing any form of assistance to plaintiff

13   is appointing counsel."  (ECF No. 69 at 3) (citing Mickens v. Inslee, 2021 WL 633634, at *1-2

14   (W.D. Wash. Jan. 13, 2021) (construing plaintiff's request for ADA assistance as a request to

15   appoint counsel.  As such, defendant contends that plaintiff has been able to clearly articulate his

16   straightforward retaliation claim and thus does not demonstrate a need for counsel.  (ECF No. 69

17   at 4.)

18          B.     ADA Claims vs. Claims Under 42 U.S.C. § 1983

19          Plaintiff cannot allege a section 1983 claim predicated upon a violation of the ADA.  "An

20   alleged violation of federal law may not be vindicated under § 1983 . . . where . . . 'Congress has

21   foreclosed citizen enforcement in the enactment itself, either explicitly, or implicitly by imbuing

22   it with its own comprehensive remedial scheme.'"  Vinson v. Thomas, 288 F.3d 1145, 1155 (9th

23   Cir. 2002) (quoting Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995)).  "[A]

24   comprehensive remedial scheme for the enforcement of a statutory right creates a presumption

25   that Congress intended to foreclose resort to more general remedial schemes to vindicate that

26

27   law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2); see also
     George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against unrelated
28   defendants belong in different suits").

                                                    12

1   right." Vinson, 288 F.3d at 1155 (quoting Lollar v. Baker, 196 F.3d 603, 609 (5th Cir. 1999)).

2   The Ninth Circuit has found that the specificity and comprehensiveness of the ADA "suggest[s]

3   that Congress intended the Title II remedial scheme to be the exclusive means by which a party

4   could vindicate his Title II ADA rights, and that allowing the plaintiff to use the more general

5   § 1983 remedial scheme instead would be contrary to Congress's intent." Okwu v. McKim, 682

6   F.3d 841, 844 (9th Cir. 2012) (citing Vinson, 288 F.3d at 1156).  Thus, "[s]ection 1983 is not a

7   vehicle to vindicate statutory rights secured by the ADA; rather, plaintiff must sue under the

8   ADA directly." Hill v. Baca, 2010 WL 1727655, at *6 (C.D. Cal. Apr. 26, 2010).

9          C.      Discussion

10          The Court does not construe plaintiff's motion as a request for the appointment of counsel.

11   The instant action proceeds solely on plaintiff's civil rights claim alleging retaliation by defendant

12   Torcedo in violation of the First Amendment.  Thus, absent leave to amend, plaintiff cannot

13   pursue ADA claims in this civil rights action because he must pursue such claims under the ADA

14   directly.  See Vinson, 288 F.3d at 1155.

15          Further, to the extent plaintiff seeks an order requiring such accommodations, plaintiff is

16   advised that the CDCR has a process for obtaining ADA accommodations, and plaintiff fails to

17   demonstrate that he has requested such accommodations at HDSP.  See, e.g., Cal. Code Regs. tit.

18   15, § 3999.9.  Further, even if plaintiff had sought such accommodations and been denied, which

19   he does not claim, plaintiff must first exhaust available administrative remedies concerning such

20   denial.  42 U.S.C.§ 1997e(a).  Only then may plaintiff file an action under the ADA in federal

21   court.  Finally, the record demonstrates that plaintiff is literate, able to write, and file documents

22   on his own behalf, despite his disabilities.  Indeed, plaintiff just filed a new pro se civil rights

23   action on November 27, 2024.  Diaz v. Jones, 2:24-cv-3339 CSK P (E.D. Cal.).

24          Moreover, even if the Court construed plaintiff's ADA requests as requests for injunctive

25   relief, such requests should be denied because there are no named defendants in this action who

26   are employed at HDSP.  An injunction against individuals who are not parties to the action is

27   strongly disfavored.  "It is elementary that one is not bound by a judgment . . . resulting from

28   litigation in which he is not designated as a party. . . . " Zenith Radio Corp., 395 U.S. at 110.

13

1  [Add citation for this quotation.]  Plaintiff's efforts to have ADA accommodations provided to

2  him at HDSP in 2024 are directed to unidentified individuals over whom the Court does not have

3  jurisdiction.

4         Further, as explained above, a plaintiff seeking preliminary injunctive relief must

5  demonstrate a sufficient nexus between the injury claimed in the motion and the conduct asserted

6  in the underlying complaint.  Pac. Radiation Oncology, 810 F.3d at 636.  "The relationship . . . is

7  sufficiently strong where the preliminary injunction would grant relief of the same character as

8  that which may be granted finally."  Id. (quotation marks omitted).  "Absent that relationship or

9  nexus, the district court lacks authority to grant the relief requested."  Id.; see Saddiq v. Ryan, 703

10  F. App'x 570, 572 (9th Cir. 2017) (affirming denial of preliminary injunction because the

11  prisoner did not establish a nexus between the claims of retaliation in his motion and the claims

12  set forth in his complaint).  In this action, plaintiff seeks money damages which relief differs from

13  his request for ADA accommodations at HDSP.

14         Finally, as to plaintiff's request to be transferred, this Court has no authority to determine

15  where plaintiff should be housed.  It is well settled that a prisoner has no constitutional right to be

16  housed in a particular prison.  See Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985); Olim v.

17  Wakinekona, 461 U.S. 238, 245 (1983) (holding there is no protectable interest in being housed in

18  a specific prison or particular state); Meachum v. Fano, 427 U.S. 215, 224-25 (1976) (conviction

19  sufficiently extinguishes prisoner's liberty interest and empowers the state to confine him in any

20  of its prisons; no liberty interest protect by the Due Process Clause is implicated in a prison's

21  reclassification and transfer decisions).

22         For the above reasons, the Court recommends that plaintiff's putative ADA claim and

23  motion for ADA accommodations (ECF No. 68) be denied without prejudice.

24  VI.    ADMONITIONS

25         Plaintiff's motions were difficult to parse because he included multiple unrelated requests

26  in the same documents and these requests were unrelated to his instant claims against defendant

27  Torcedo.  Plaintiff is advised that the Eastern District of California maintains one of the heaviest

28  caseloads in the nation, a significant portion of which is comprised of pro se prisoner cases.  This

14

sometimes causes unavoidable delays in the resolution of individual matters.  Including issues
unrelated to the underlying action further slows and delays the district court's ability to address
this case.  In the future, plaintiff should refrain from filing unrelated issues in this action, limit his
filings to his claim against defendant Torcedo, and focus on preparing his opposition to the
defendant's motion for summary judgment which has been pending since August 2024 and for
which plaintiff has been granted numerous extensions.  While the Court is sympathetic to
plaintiff's disabilities, this Court is not inclined to grant further extensions of time absent a
showing of substantial cause.  Plaintiff is again cautioned that failure to file an opposition may
result in the dismissal of this action for failure to prosecute.  Fed. R. Civ. P. 41(b); Local Rule
110; see also ECF No. 63.

   Accordingly, IT IS HEREBY ORDERED that:

1. The findings and recommendations (ECF No. 65) are vacated.

2. Plaintiff's motion for extension of time (ECF No. 66) is granted.

3. If plaintiff currently has access to his legal materials, he shall notify defendant's counsel as soon as possible, and file a notice with the Court within seven days from the date he receives this order.

4. If plaintiff does not timely notify the Court that he has access to his legal property, within twenty-one days from the date of this order, counsel for defendant is requested to file a status report regarding the following issues:  (a) the status of plaintiff's legal property; (b) if plaintiff's legal property is not at HDSP, advise the Court of efforts to have plaintiff's legal property returned to HDSP as soon as possible; and (c) whether or not plaintiff is due to be transferred away from HDSP within the next sixty days.  If plaintiff files a notice that he currently has his legal property, defense counsel is relieved of his obligation to respond to the Court's requests.

5. Plaintiff is granted 30 days to file an opposition to defendant's motion for summary judgment (ECF No. 57).

6. The Clerk of the Court is directed to send plaintiff a copy of defendant's motion for summary judgment.  (ECF Nos. 57, 57-1, 57-2, 57-3, 57-4, 57-5, 57-6.)

15

7.  Plaintiff's request related to exhaustion (ECF No. 68 at 4) is denied.

Further, IT IS  RECOMMENDED that:

1.  Plaintiff's motions for reconsideration (ECF Nos. 66, 68) be denied; and

2.  Plaintiff's putative ADA claim and motion for ADA accommodations (ECF No. 68) be denied without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 19, 2024

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/diaz0916.eot.fr

16